Good morning. I'm Philip Brooks, appearing on behalf of Mr. Merced. The certificate of probable cause in this case covered all of the issues that we raised in the petition before the district court, but unless the court has some other direction for me, I'd like to focus this morning just on one issue of the dismissal of the juror. I'm going to refer to him as Mr. Black because under California law, since he's a dismissed juror, his name is not confidential. It's just jurors that sat on the case. I know in the court's opinion they refer to him as Mr. B, but I find that a little awkward. In Mr. Black's jury questionnaire, he stated, I recognize and believe in jury nullification where appropriate. The court followed up on this and asked Mr. Black, well, then if I were to instruct you on the law of California and you were to find that it went against your conscience, is it reasonable for me to assume that you might disobey my instructions or not follow my instructions? And Mr. Black said, it is reasonable for you to assume that. Now, this all took place at the jury selection part of the case. Before the jury obviously had heard any evidence, before really anybody knew anything about the case, other than perhaps what the charges were in the case. But when in the voir dire would that have been fleshed out where you would have been satisfied with the interrogation? I'm sorry? When in the voir dire process would have that been fleshed out sufficient so that whatever the judge needed to ask further of Juror Black would have satisfied your criteria? Actually, Your Honor, I don't think it could have been fleshed out sufficiently in the jury voir dire process given what Mr. Black's stated frame of mind was. Now, if Mr. Black had made a different statement, if he had said I don't like American courts or I don't like the courts of Alameda County and I'll never vote for conviction in these courts, I mean, that would be another matter. But what Mr. Black is stating in this case is more of a theoretical or hypothetical possibility. And by way of analogy, I was trying to think of some analogies here, and it occurred to me that I might go out on the street and come to an intersection where I want to cross and there's a red light there, and the red light stays red and it stays red and it stays red for 15 or 20 minutes, and obviously something's wrong with the light. And it might be that a policeman would come up next to me and I would say something hypothetically like, if I have to wait another 10 or 15 minutes for this light, I may just go ahead and cross against the light. But I would say to the court that at that point I haven't committed a violation of the law, I'm just talking about a possible violation of the law that might happen later on. Similarly, we might think of a man who might say, I can envision a situation where if things got bad enough, I might steal food in order to feed my family if they were starving. Obviously, that would be a violation of the law if he did it, but at the point we're talking about, he's just talking theory. He's talking about something that might hypothetically happen in the future. Now. Ginsburg. In your red light example, if he does indeed run the red light, it will be apparent. That's right. And he can be called to account. That's right. If it's jury nullification, there would be no way of knowing, would there? Well, if Mr. Black made a statement, like the statement, if he admitted it, like Let's take as an example the Williams case that the California Supreme Court decided, where a juror on the, during jury deliberations now, after all the evidence has been presented, so different from our case, the juror knows what the case is about. He sees that the prosecution wants him to convict the defendant of having unlawful sexual intercourse with a minor, statutory rape. And the juror had some kind of an ethical problem with that. He saw exactly what the issue was. He had confronted his conscience about it. The issue was defined. And he told the judge, I just can't see staining this young man for the rest of his life for an event like this. Now, under a situation like that, the California Supreme Court found that the trial court was within the law to excuse the juror and substitute an alternate. But it seems to me that the situation here is very different, because Mr. Black has not yet confronted his conscience about this case. And for all we know, once he sees what the evidence is and what the law is, he will have no problem in deliberating and performing all of the duties that he's supposed to perform as a juror. So it seems to me that, to put it bluntly, that the trial court in this case may have jumped the gun in excusing Mr. Black at the point that it did. What's the standard under which we judge this? Is this an AEDPA case? This comes up on habeas. It comes up on habeas. Under AEDPA, that is to say, we have to find, I forget the precise phraseology, but clear violation of the Supreme Court case law and so on. It either has to be the decision of the State court, and in this case it would be the California Court of Appeal, either has to be contrary to clearly established United States Supreme Court law or an unreasonable application of. And it's our position that so I think we ought to look at the what the court of appeal said in this case, because I believe that it satisfies that standard. Robertson, please. The court of appeal said that Mr. Black's answer to the court's follow-up question  in the excerpt of the record on page 60. It found that this was a more than adequate basis to excuse him. It found that his answer gave a definite impression that his views would impair his performance as a, excuse me, as a juror. The court found that Mr. Black was a prospective nullifying juror and referred to the trial court's statement, I have a right to excuse him if he's going to engage in jury nullification. Now, it seems to, I'm sorry. That's absolutely accurate. I'm well aware of and quite familiar with the court of appeal opinion. What's the United States Supreme Court case or cases that that's clearly against? Well, that is a question that would be hard to answer in one minute, but I will say that. Well, if you can't do it in a minute, that suggests it's not so clear, but let's give it a shot. Okay. Well, I think the history of this thing starts in the Sparf case. It was decided in 1895, where we see that it was a very, very close question indeed among the United States Supreme Court justices, whether even if they had a juror that insisted on nullifying and they knew that he was going to nullify, whether it would be appropriate to excuse that juror. And in Sparf, they ultimately decided by a majority that it would be appropriate to excuse such a juror because he has to follow the law. Now, the cases subsequent to Sparf have admitted or accepted that that's the law that the U.S. Supreme Court has laid down, but nevertheless, they continue to point out in case after case that the jury is the conscience of the community. It stands between perhaps an overzealous prosecutor, perhaps a judge who is mistaken and the law. And we know that it's not the juror can't be punished for voting against the law and the evidence. We know that since Bushell's case. That's recognized in all the United Supreme Court, United States Supreme Court cases. We know that the United States Supreme Court recognizes this concept by allowing inconsistent verdicts to stand where a reasonable person would look at these two defendants or two counts in the same case and say that cannot be reconciled with the law and the evidence. And those are allowed to stand because the juror is allowed to vote his conscience and allowed to exercise lenity to, in the words of Justice Holmes, to vote for acquittal in the teeth of the law and the evidence. And so this concept is, I think, still recognized in a continuous thread through the entire jurisprudence of the U.S. Supreme Court. And I guess maybe the most recent case I've read on it is the Gowden case, U.S. v. Gowden. And these are all cases which, although I haven't personally discussed them in the brief, all of them, they are all cited in the court of appeal opinion or in the Williams opinion that it relies on or cited by the Attorney General. I think it's accepted that the U.S. Supreme Court continues to recognize this function of the jury. So your argument, then, extrapolated, as I understand it, is that, in fact, the court of appeal is wrong because you do have the right to a juror who is opposed or supports jury nullification. Well, I would take that position, but I would take the alternative position that we don't know Mr. Black was that kind of a juror in this case, and so it was imbued. Kennedy. There's clearly no holding in the Supreme Court that says the former, that you're entitled, that the defense is entitled to a juror who is unequivocally in favor of jury nullification. That's, I think, that's a, that's a, that's a, that's a, that's a, that's a, that's a, that's a, that's a, that's a, that's a, that's a, that's a, that's a, that's a, that's   jury nullification, which is a condition.    The juror may nullify, although I think Your Honor would be correct to say there is not a U.S. Supreme Court case saying that if I am a criminal defendant, that I have a right to insist on a juror who has announced in advance he's going to nullify. So then it boils down to, in this case, whether Juror Black said enough. And your, as I understand your position is he couldn't have said anything more or less at voir dire because it was too abstract. The only control over a juror who does nullify during the course of the proceedings that becomes known to the court is to excuse the juror. Right. And I think that's the way the court said it confronted in Williams. In the Thomas case that's cited in the briefs, a juror was having a, well, I guess the other jurors informed on him to the judge in Thomas. The juror number five was having some kind of problem in reaching a verdict. And the court made a finding after interviewing all the jurors and after interviewing juror number five that in the court's view, in the trial court's view, the problem was that juror number five just didn't like the drug laws and he just wasn't going to vote to enforce them, period. And so after an inquiry like that, our court system allows a juror to be excused for cause. We don't have any such inquiry in this case. And I guess if this answers Your Honor's question, I guess we couldn't have had at this stage of the proceedings because we don't know how Mr. Black would have felt about the case if they had allowed him to get into it. Okay. Thank you. Ginsburg. I want to make sure I understand the answer to Judge Fischer's question. Yes. I thought here, there's no way the judge could ask more questions to justify excusing the juror. In other words, in your opinion, you're suggesting that it would have to be sometime later, somebody would have to snitch on another juror. It was too late after the verdict and judgment are in. I'm just trying to figure out what you were suggesting a trial court should do under these circumstances. Yes. If anything. Yes. I think that it's hypothetically possible for a juror to give an answer during a voir dire that would disqualify him. For instance, if the judge in this case had gone further and said, well, Mr. Black, is there anything about this case that, you know, bothers you or you think might lead you to exercise the power, and if he said, well, I just, I would never convict somebody in a case where it depends on the testimony of an Oakland police officer, period, I think that would be a disqualifying bias. But. All right. I think I understand. All right. Thank you. I don't know if this makes things any clearer, but just to kind of refocus what my position is here, it's our position that the law does not allow the trial court to sort of make a preemptive strike against the existence of nullifying potential or possible nullifying jurors on the jury. It's our position that, in addition, a juror such as Mr. Black, now that he's said this in voir dire in Mr. Merced's case, could not on this basis be disqualified from ever sitting on another jury, although his comment might be equally applicable to any other case on which he might sit. But he can't be stricken from the jury roles, and the law doesn't permit that. He hasn't come to the point where he has shown that there's anything about him that would impair the performance of his duties as a juror, either in this case or in future  cases. I would like just to add one or two other points. I don't know if this illuminates things any further, but it may. In the Gowden case, the Court, the U.S. Supreme Court has shown us that the two things sort of exist at the same time. Number one, the defendant is not entitled to a nullifying juror that we know is a nullifying juror. The defendant is not entitled to a jury instruction to the jury under the circuit cases that the jury has the power to nullify. But at the same time, the jury ultimately is the one that has to decide the guilt or innocence of the defendant, and they have to do it by finding the facts, listening to the law given to them by the judge, and interpreting it as best they can and applying it in their best conscience. And they have to apply that law to the facts. Let me ask a question about that, if I may. All right. Excuse me for interrupting. Please. When the jury is sworn in, they're asked to swear that they will follow the law. That's right. Are they not? So the jury says, I won't swear to that. May he be excused? Pardon me? May he be excused. And you're hearing this, and I believe in jury nullification under appropriate circumstances. Instead, they're asked to raise their hand and swear to follow the law. He says, I can't do that. Would that be sufficient in your mind to excuse him? Well, I think it's a – it's sort of the core question of this case, but I think what we have to look at and say, first of all, does he have to say, I will follow the law as it's given to me by the court, regardless of whether it conflicts with my conscience? That's another question. Or, you know, if he follows the law to the best of his ability, that may include the application of his conscience. There's a quote from one of the cases, if I can find it here. I guess it was – I think it's from Rochelle's case. But it was remarked that the jury are perjured if the verdict be against their own judgment, although by the directions of the court, for their oath binds them to decide according to their own conscience and judgment. And they are supposed to, of course, listen to the instructions of the court and be guided by the instructions of the court and be educated by the instructions of the court. But ultimately, the jury's verdict has to be according to each juror's conscience. That's what – that's – they call it jury nullification. Perhaps it's sort of a negative term, but that's what the law is about. So I don't mean to try to avoid Your Honor's question, but it just seems to me that from all I've read in the U.S. Supreme Court's cases, it seems to be acknowledged that part of the juror's oath is for the juror to follow his conscience. But that's not the instruction the juror is given. Or the promise the juror makes. I will follow the law except when it conflicts with my conscience. That was the only point I wanted to make. Yes. Thank you. Anyway, why don't we – you've got some time. Let's hear from the other side, and then we'll give you some time to respond. I think that's a good idea. Thank you for that suggestion. May it please the Court. Peggy Ruffray, Deputy Attorney General for Respondent. Your Honor, this is a case about potential jury nullification, but it's also a case about dismissal for cause. And I think that the U.S. Supreme Court law on that particular issue is very clear, and it's the case that the California court of appeals cited in this case, Wainwright v. Witt. And what the Court held in that case, I'd like to actually quote a little portion of it which wasn't quoted in the brief, because I think it speaks to the particular issue that we have here, that the standard of dismissal for cause does not require that a juror's bias be proved with unmistakable clarity. This is because determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism. What common sense should have realized experience has proved. Many veneermen simply cannot be asked enough questions to reach the point where their bias has been made unmistakably clear, because veneermen may not know how they will react when faced with imposing the death sentence or may be unable to articulate or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. Now, this is not a – nullification isn't really synonymous with bias. Bias is something that, you know, I'm going to look at the facts, but I'm starting out with a presumption, to take your hypothetical, that I simply am not going to believe anything the Oakland police say or some other form of bias. This isn't bias in that sense. Well, I agree with Your Honor. But I think that this case applies to any kind of challenge for cause. And inability to follow the law would certainly fall into that category. And so what the case – It isn't inability. It's unwillingness. Correct. Unwillingness, yes. What the court of appeals said was that under the Federal standard, we are left with the definite impression that the juror would not follow the law. And so the question becomes, was that an unreasonable application of Wayne White versus Witt? That's a hard one. And it's our position that that was not unreasonable at all. Now, Juror Black volunteered this information on the very last question of the jury questionnaire. The question said, is there any matter that might affect your ability to be a fair and impartial juror? And that was the question to which he responded, I recognize and believe in jury nullification. Then the judge asked him on Bourdier, would you agree with me that if the law went against your conscience, for whatever reason, that you wouldn't follow the law? And the juror said, yes, that's right. The California court of appeals said, under those circumstances, the judge was left with a definite impression that the juror would not follow those instructions. But jury nullification is such an odd business. We recognize and the Supreme Court sustains the power of the juror to nullify. That is to say, I've heard everything, I understand what the law is, I disagree with the law, and I nullify it. The Supreme Court does say that there is that power out there. On the other hand, there is not. But he just can't say it. Well, they certainly don't want to encourage it. And that's because there are two U.S. Supreme Court cases that we cited in our brief that speak directly to this issue of jury nullification as opposed to a dismissal for cause. And those two cases are Sparf v. United States and United States v. Gowden, which have been mentioned here. And what the Court said in Sparf is that it is the duty of juries in criminal cases to take the law from the courts and apply that law to the facts as they find them to be from the evidence. And in Gowden, the Court said the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions. So from those cases, I think you can clearly extrapolate that there is no right to a nullifying juror. And it certainly is not. There is no right to a nullifying juror. But this one's trickier because this is a juror who indicates that under certain circumstances, he might be willing to nullify. Right. But circumstances aren't specified. And I think it's probably a good kind of guess that someone who says right up front I'm willing to nullify is likely to be somebody who will be more favorable to the defense side than most of your average jurors. Correct. And the judge is taking him off the jury not because of that directly. That would be forbidden. But because he has, if I can use the word this way, unwisely admitted that he knows his power. Well, I think you're absolutely right that that would probably come down in most cases in favor of the defense, although we simply don't know. Sure, we do not know. But I think what you're getting back to is the question that's answered in Wayne Wright v. Witt, which is how much do you have to be convinced that this juror is going to be a problem? And the answer is you have to have a definite impression. That's what the trial court found in this case. That's what the court of appeal affirmed. And it's our position that that's not unreasonable. Unreasonableness is a broad concept, and there are many outcomes that are available within the scope of that. And under the ADPA deference, this can't possibly be unreasonable. That's our position. Does the you said they don't want to encourage jury nullification. Does not sustaining it in this case encourage jurors who want to avoid jury service to start using jury nullification as a ticket off a jury? I don't mean to be facetious in that. No, no, I understand your question. Well, I think the Court can't in jury encourage jury nullification to the existing jury. Well, he wouldn't encourage it, but if word got out through the grapevine or the blogs or whatever that a cute way to get out of jury service is simply to volunteer that you believe in jury nullification, and that in California anyway is a ticket off the jury, is that a concern at all in any of this? It's a case-by-case determination, and, again, the circumstances of this case where the juror volunteered the information to a very open-ended question about what might affect your ability to be fair in the case, and then the discussion, you know, we didn't see the juror, we don't know what the trial court saw, we don't know if the juror was very defiant in his answer, if he was timid, so I think there is room for an individual determination, and we don't really run the risk of some kind of wholesale jury nullification as an excuse to get off of a jury, and I certainly don't think that happened in this case. I did not invoke it when I was on jury duty, so. I think that's really all I have to say on this particular issue. You know, there were a number of issues raised since counsel focused on this issue. I'll say one other thing. The court of appeal certainly explained the difficult practical matter that it would be to try to discern a particular case in which a juror would nullify. It really simply would not be possible for a court to try to give examples based on the case in front of it when the evidence has not come out yet. Even though there was a previous trial in this case, it's always unclear how the evidence will come out in a particular case. So it would simply be impossible. But even if it could be done, I think it would be unwise to try to formulate some kind of a hypothetical that might not take into account every situation that would bear on this individual juror's mind. That's what the court of appeal said, too. And the trial court even said, we simply don't know what might affect this particular juror. So in light of that, again, we get back to the definite impression. And under the circumstances, there was a definite impression in this case that the juror would not be able to follow the law. The judge really had no choice, I think, but to dismiss him. Kennedy, on another issue, and I wasn't raised in oral argument, but I'd just be curious about your reaction on the comment to the jury about failure to call defense experts to rebut the gun evidence. One of the courts, perhaps it was the district court, said, well, gee, it's not intimidating because it clearly didn't intimidate the defendant here. That seems to me sort of a bootstrap, non sequitur. I'm not sure which of the arguments you're talking about. There was one about the officer talking. This is the Griffin violation where the defense witnesses. Now, it's true that the – it did not – I say it's true. It did not comment on the defendant's failure to get up and testify, which is the pure Griffin violation. But it did say that, look, we gave the gun and the residue stuff all to defendants, experts, and they haven't shown up here, therefore, in effect, you can infer from that that we nailed them on that. And the argument being made is that makes it difficult for a defendant to get expert consultants and the like, because if they don't then bring them on to say something, their silence will be used as an effective admission of culpability. I think that's a troublesome issue, and I was somewhat confused by the district court saying, well, the notion it would chill defendants from hiring experts or giving them access to information is disproved by the fact that in this case, the defendant went ahead and had the experts. Well, that's a non sequitur because he didn't know at the time he hired the experts that giving the materials over to him would be used against him at trial. So on a going forward basis, I'm just curious, is it, in California, is it routine to comment on the failure of a defendant to call his or her experts if they've been involved in helping the defense prepare an investigation? I don't know the answer of whether it's routine or not. I know there is a Ninth Circuit case that I cited. The name escapes me at the moment, but it was a similar situation in a capital case where certain experts were not called, and that point was raised in the trial, and that was held to be all right. What the court of appeals said about this was that it was a fair comment on the state of the evidence, and that Griffin is essentially a personal right to the defendant. In other words, the prosecutor can't comment on the defendant's right to remain silent, but any logical witnesses that the defense doesn't call are fair comment and certainly don't implicate Griffin. Now, that would hold true as to a precipient witness as well as to an expert, and I think Your Honor's concern really holds true in any situation where the defense goes out and talks to a potential witness, whether it's a family member or a precipitant witness or an expert, they always run the risk that that person is going to say something unfavorable to the prosecution. And if they're a logical person to have called and then they don't call them, the prosecution can comment on that. I think it's a well-established principle that that is a fair comment on the evidence. I don't think the fact that it happens to be an expert really changes that equation. Well, I think it does, because you hire experts as consultants. To go out and talk to a precipitant witness or something like that is different. But when you're hiring, bringing somebody in to assist you to evaluate the strength and weakness of the prosecution's case, I think you can make a principle distinction between that and a precipitant witness. Well, in this particular case, for example, with the ballistics expert, the gun that was found in the apartment where the defendant was hiding turned out to be the gun that was shot at the officer. The bullets totally matched. Now, that was given to the defense expert. He examined that. That evidence stands on its own. But when the prosecution then says, and, just to reinforce what you just said, they didn't call this guy, this expert, to come on and say anything different, there are lots of reasons why you may decide not to call an expert witness. But my point is that even if you've hired that person for some kind of background information, certainly if that person says, I believe in my expert opinion that this isn't the gun that was fired at the officer, then your failure to put that in is a fair game. Well, you're assuming the conclusion. The fact is we don't know why he didn't call the expert. It may probably be what you said. Their point is you bring in an expert consultant to advise you so you can evaluate the strength and weakness of your case.  The prosecution expert is put on these gun cases or similar scientific cases, and they give an equivocal answer. So, you know, the prosecution may put them on because that's the best they've got. The defense may be in the same situation and decide, I'm going to just go ahead. I don't have to do it. It's equivocal. It doesn't support or oppose the prosecution's case, but it's not clear opposition, so I'm not going to run the risk. And yet the prosecution then is allowed to say, well, their expert looked at this. He didn't call him. Therefore, you know, the syllogism is we must be right. And I think that's a dangerous premise. Well, the premise is that the evidence is now undisputed. I think that's the way the prosecutor characterized it. And it was, in fact, undisputed. It certainly would have been logical that even if it was a broad consultation, that if that defense expert had some helpful piece of information, he certainly would have been called. That was the only point the prosecutor was making. Kennedy. You say it's undisputed. You don't have to then gild the lily by saying it's undisputed. They were given all the information. They didn't call this person. There's a difference. But I think you've made your point, and I understand. That doesn't fall within the category of Griffin, which is a particular prohibition against a comment on the defendant's right to self-claim. I think that's what I started out with myself. Thank you. Thank you. Mr. Brooks. I really think I've said pretty much what I've had to say. With regard to the last point raised by Justice Fischer, I assume the Court received my late citation to the Coddington case. I sent it in by letter. It wasn't in the brief. When did you send it? A couple of months ago. I'm sure we have it, although I don't have it immediately in mind. Because Coddington addresses that exact point and draws the distinction that Justice Fischer was drawing between an expert and a judge. By the way, we're judges here. Justices are here. It's okay. It's been promoted. There's no justice in the Ninth Circuit. Okay. So assuming, then, that all the judges have seen Coddington, I think it addresses the point that Judge Fischer was raising, and I'm prepared to submit it unless the Court is looking further. It was filed with us October 13th. Okay. Thank you very much, both sides. Thank you. The case of Merced v. McGrath is now submitted. That concludes our argument calendar for this morning. We'll reconvene tomorrow morning at 9 o'clock, and we now stand in adjournment.
judges: D.W. Nelson, W. Fletcher, Fisher